IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| EVE C. ATKINSON, | Case No. 1:14-cv-01268-AC |
| Plaintiff, | OPINION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | |
| Defendant. | |

MARLENE YESQUEN
Black, Chapman, Webber & Stevens
221 Stewart Ave., Suite 209
Medford, OR 97501
    Attorney for plaintiff

BILLY J. WILLIAMS
Interim United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

ALEXIS L. TOMA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
    Attorneys for defendant

ACOSTA, Magistrate Judge:

Eve Atkinson ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## *Procedural Background*

Plaintiff applied for DIB on September 20, 2010, and SSI on October 15, 2010, alleging disability as of August 23, 2010, due to chronic back pain related to bulging discs at L4 and L5, incontinence, depression and bipolar disorder, surgical complications including bowel blockage and unhealed wounds, gastrointestinal disorder, nerve damage in the spine and shoulders, alcoholism, and chemical dependency. (Tr. 39, 106.) Her applications were denied initially and upon reconsideration. (Tr. 106-28, 144-56.) A hearing convened on September 25, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 67-103.) On October 11, 2012, the ALJ issued a decision finding plaintiff not disabled. (Tr. 39-53.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this court. (Tr. 1-4.)

## *Factual Background*

Born on July 25, 1967, plaintiff was 43 years old on the alleged onset date of disability and 45 years old at the time of the hearing. (Tr. 67, 106.) She is a high school graduate and completed three years of college. (Tr. 70.) Plaintiff previously held jobs including collections clerk, customer service representative, retail manager and bookkeeper, controller, and staff accountant. (Tr. 71-76,

115.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c).

If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## The ALJ's Findings

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since August 23, 2010, the alleged onset date. (Tr. 41.) At step two, the ALJ found plaintiff had the following severe impairments: "chronic abdominal pain status post multiple ventral hernia repairs with residual abdominal wall weakness; status post right ileocectomy; chronic back pain with no neurological deficits; alcoholism; depression; anxiety disorder; and marijuana abuse." *Id.* At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. (Tr. 42.)

Accordingly, the ALJ continued the sequential evaluation process to determine how

plaintiff's medical limitations affected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> . . . [she can] perform sedentary work . . . she can lift 10 pounds occasionally and 10 pounds frequently [sic]; and she can sit, stand, and walk each 6 hours in an 8 hour workday, for a combined total of 8 hours of activity. She can never climb ladders, ropes, or scaffolds. Due to the effects of narcotic medication marijuana, and alcohol abuse, she cannot work in places with hazards, such as unprotected heights or large moving equipment. She can occasionally stoop, kneel, crouch, and crawl; and she can frequently balance and climb ramps and stairs. She can understand and carry out simple tasks. Due to substance abuse, she should have no more than occasionally direct public contact. She requires access to a bathroom approximately two times per day outside of scheduled breaks, but these bathroom breaks would interrupt task performance less than 10 percent of the workday.

(Tr. 44-45.)

At step four, the ALJ found plaintiff was unable to perform any past relevant work. (Tr. 51.) At step five, the ALJ determined plaintiff had the RFC to perform the following representative occupations: credit authorizer, charge account clerk, and sorter. (Tr. 52-53.) Therefore, the ALJ concluded plaintiff was not disabled under the Act. (Tr. 53.)

*Discussion*

As a threshold matter, although they differ on specific assignments of error, the parties agree that the ALJ's errors in her October 11, 2012 decision require remand. Def.'s Br. 1-2. While defendant argues further proceedings are necessary, plaintiff contends the case should be remanded for immediate payment of benefits. In order to determine whether the case should be remanded for proceedings or an immediate award, the court must determine whether the record is fully developed; if the improperly discredited evidence would require a disabled finding if credited as true, and if substantial evidence supports disability. *See Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir.

Page 5 - OPINION AND ORDER

2014). For the reasons set forth below, the case is remanded for further proceedings.

I. Medical Evidence

An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why he, rather than the doctors', is correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Here, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20-21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 F.3d at 1012.

A. *Dr. Ann Kellogg*

Plaintiff argues that the ALJ failed to appropriately incorporate all of her functional limitations in the RFC formulation and subsequent hypothetical questions for the VE. Defendant maintains that the ALJ reasonably rejected treating physician Ann Kellogg, D.O.'s opinions regarding the frequency and duration of bathroom breaks necessitated by plaintiff's incontinence,

Page 6 - OPINION AND ORDER

by including the requirements of "access to a bathroom approximately two times per day outside of scheduled breaks, but these bathroom breaks would interrupt task performance less than 10 percent of the workday" in her RFC. (Tr. 45.)

In her April 2012 functional assessment, Dr. Kellogg indicated plaintiff would sometimes need to take unscheduled breaks due to incontinence, possibly every 15 minutes, with 15-30 minutes required for cleanup. (Tr. 844.) The ALJ indicated Dr. Kellogg "overstated" the need for extended bathroom breaks, noting that treatment notes from Raul A. Mirande "indicate[d] soft stools that would not require a 15 to 20 minute 'clean up period.'" (Tr. 48.) Independent review of Dr. Mirande's notes do not include any reference of a "clean up period," nor do they comment on the frequency or duration of plaintiff's episodes of incontinence in any detail. *See* (Tr. 836-41.) A single chart note dated July 7, 2011 indicates plaintiff "is having regular bowel movements that are actually quite loose . . . if it continued we would check for C. difficile." (Tr. 840.) Dr. Mirande's passing reference to "loose stool" and the possibility of a bacterium presumably causing diarrhea cannot be rationally construed as evidence that plaintiff does not need breaks or cleanup periods. In fact, the evidence appears to support Dr. Kellogg's assessment. As such, the ALJ's rationale for discounting Dr. Kellogg's opinion is invalid.

Additionally, during the hearing, plaintiff explained she had six-to-seven bowel movements per day. (Tr. 80-81.) Her testimony was consistent with her August 2011 report of having five-to-six bowel movements per day. (Tr. 781). The ALJ ultimately incorporated the need for two additional bathroom breaks per workday, in addition to normal breaks. (Tr. 45). Thus, the VE's hypothetical involved a scenario wherein plaintiff would be allowed five breaks (two normal breaks, one lunch break, and two additional breaks) per eight-hour workday, which is a reasonable

Page 7 - OPINION AND ORDER

interpretation of the record considering plaintiff's testimony. (Tr. 100-02.) It is the role of the ALJ, not this court, to resolve ambiguities in the record, articulate reasons for the ALJ's interpretation of the record, and establish findings. To that end, although it was not proper to diminish Dr. Kellogg's opinion regarding limitations due to incontinence based on Dr. Mirande's chart notes, the ALJ was within his discretion to find Dr. Kellogg's findings less than completely credible based on plaintiff's own testimony. Indeed, an ALJ's findings may be upheld even if not every rationale in support is valid. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cr. 2008). To the extent the ALJ erred in assessing Dr. Kellogg's opinion regarding impairment due to incontinence, the error was harmless insofar as plaintiff's RFC reasonably accounted for plaintiff's alleged limitations in that regard. *See, e.g., Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

However, as the Commissioner concedes, the ALJ erred by failing to address certain functional limitations identified by Dr. Kellogg. Def.'s Br. 7. Specifically, the Commissioner concedes error in considering Dr. Kellogg's functional assessment of April 2012, including her opinion that due to "pain and other symptoms," plaintiff cannot stand for longer than one hour at a time, can only stand/walk two hours per day, must walk for five minutes every 90 minutes, and has additional postural restrictions. *Id.*; (tr. 842-46.) Dr. Kellogg further indicated plaintiff's pain symptoms are severe enough to "constantly" interfere with her attention and concentration in simple work tasks. (Tr. 843.) The doctor also opined plaintiff was capable of performing a low-stress job. *Id.* Notably, although the ALJ indicated she did not fully credit Dr. Kellogg's opinion regarding incontinence, she inferred that she otherwise accorded Dr. Kellogg's opinion significant weight "because she is a treating source and has a longitudinal perspective of [plaintiff's] condition." (Tr.

43.) In contrast, the ALJ indicated she accorded "little weight" to the state agency medical and psychological consultants because plaintiff's impairments "clearly cause greater limitations" than they determined. *Id.* Thus, viewing the record as a whole, the ALJ did not articulate any specific reasons for discarding Dr. Kellogg's opinions regarding sit/stand/walk or concentration, persistence or pace.

The Commissioner argues Dr. Kellogg's assessment of constant concentration and attention deficits are not supported by the record. *Id.* However, the ALJ did not indicate she was according Dr. Kellogg's non-incontinence limitations diminished weight because they were not supported by the record. (Tr. 48.) As explained above, the ALJ inferred the opposite. *Id.* Moreover, the court cannot affirm the ALJ's decision on grounds she did not invoke. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citation omitted).

The Commissioner further maintains that constant concentration and attention limitations are categorically inconsistent with the ability to perform a low-stress job, casting doubt on the validity of the doctor's opinion. Def.'s Br. 7. However, the argument is not persuasive because defendant does not offer any case law or statutory support.

Moreover, Dr. Kellogg's two opinions require different analyses under the Act. The first – concentration and attention – is an assessment of whether plaintiff has particular medical functional limitations, while the second – ability to work a low-stress job – is an opinion regarding the ultimate question of disability. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). The policy rationale for the distinction is that a physician may not have familiarity with the complexities of the Act's statutory scheme, and therefore may be unable to assess whether a claimant is disabled under the Act. *See* Social Security Ruling ("SSR") 96-5p, *available at* 1996 WL 374183, *5 ("[B]ecause

Page 9 - OPINION AND ORDER

[opinions on the ultimate issue of disability] are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner . . . even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Accordingly, Dr. Kellogg's opinion that plaintiff can work a low-stress job is not controlling or given special significance on review. SSR 96-5p. As such, the Commissioner's contention that the opinion is internally inconsistent is unavailing. However, the doctor's specific limitations regarding exertional, postural, and non-exertional limitations do require remand for further proceedings, as it is not clear from Dr. Kellogg's report the degree to which plaintiff's functional impairments would be affected if plaintiff's arguably manageable incontinence issue was removed from the equation. An ALJ, rather than this court, must resolve the ambiguity on remand.

B. *Gia Seutter, M.S.W., C.S.W.A.*

Plaintiff argues the ALJ erred in rejecting the opinion of plaintiff's psychological counselor Gia Seutter, M.S.W., C.S.W.A.[1] (Tr. 49.) Ms. Seutter completed a "mental impairment questionnaire" form in which she indicated, in part, that plaintiff has marked restriction in activities of daily living and maintaining social functioning, and extreme impairment in her ability to complete a normal work day or workweek without unreasonable interruption from her psychologically-based symptoms. (Tr. 961-62.) As a M.S.W., C.S.W.A., Ms. Seutter is considered a "not acceptable medical source" or "other source" under the Act, in contrast to an "acceptable medical source," such as a physician or certified psychologist. *See* SSR 06-03p, *available at* 2006 WL 2329939, *1; *see also* 20 C.F.R. § 404.1502. Accordingly, although Ms. Seutter is a health care provider, she is essentially considered a lay witness under the Act's adjudicative framework.

---

[1] Master of Social Work; Certified Social Work Associate.

Page 10 - OPINION AND ORDER

Nonetheless, "[l]ay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted); 20 C.F.R. § 404.1529(c)(3). "[I]n order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Defendant maintains that because the ALJ provided germane reasons for discounting Ms. Seutter's testimony, no error occurred.

The ALJ provided two reasons for rejecting Ms. Seutter's testimony. First, the ALJ noted Ms. Seutter "is not an acceptable medical source, qualified to give a medical opinion." (Tr. 48.) However, the mere fact that Ms. Seutter is not a medical source is clearly not a valid or germane reason to discount her assessments of plaintiff's functional limitations; if it were, the Commissioner's express provisions that "other sources" such as licensed clinical social workers, and "non-medical sources" who assess or treat a claimant a professional capacity, are "valuable resources for assessing impairment severity and functioning" would be meaningless. SSR 06-03p at *3. While it is not clear from the Act or from SSR 06-03p whether an M.S.W. (or a C.S.W.A.) is considered a "non-acceptable medical source" or simply an "other source," that a source is not an "acceptable medical source" is insufficient – the ALJ must provide *specific* reasons, germane to each witness, in order to discredit them. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout* 454 F.3d at 1054 (emphasis added).). As such, the finding cannot be upheld.

The ALJ also discredited Ms. Seutter's testimony indirectly, explaining

> patients can be quite insistent and demanding in seeking supportive notes or reports from their providers, who might furnish such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of

Page 11 - OPINION AND ORDER

> such motives, they are more likely in situations in which the opinion in question departs substantially from the rest of the evidence of record, as in Ms. Seutter's case.

(Tr. 49.) Though the ALJ's general observation may generally have merit, the ALJ failed to provide any evidence whatsoever in support of her claim that Ms. Seutter's findings were influenced by her desire to have plaintiff deemed disabled. In short, the ALJ's position lacks the required specificity.

Embedded in the ALJ's statement is her finding that Ms. Seutter's opinion departed substantially from the evidence of record. However, the bare assertion that a lay witness' opinion is inconsistent with the record is not legally sufficient. *Bruce*, 557 F.3d 1115. To the extent the ALJ found Ms. Seutter's opinion inconsistent with the opinions of the state medial examiners, her reasoning was insufficient for two reasons. First, the ALJ explicitly discredited the findings of the state medical examiners, stating, "I give little weight to the opinions of the State agency medical and psychological consultants because [plaintiff's] impairments clearly cause greater limitations . . . ." (Tr. 48.) Second, the ALJ did not indicate she was discrediting Ms. Seutter's opinion based on the state agency examiners' contrary findings. As such, the court cannot now rely on the *post hoc* rationalization that Ms. Seutter's testimony was not supported by the State agency doctors. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("we may not uphold an agency's decision on a ground not actually relied on by the agency")). Defendant's further arguments that Ms. Seutter's opinion included topics outside of her specialty, and that her longitudinal treatment of plaintiff did not begin until some time after the alleged onset date are also *post hoc* conclusions and therefore lack merit.

Finally, Ms. Seutter's diagnoses of "post traumatic stress disorder and adjustment disorder with mixed anxiety and depressed mood" were generally consistent with the ALJ's step two findings

Page 12 - OPINION AND ORDER

that plaintiff suffers from the severe impairments of depression and anxiety disorder. *Compare* (tr. 41) *with* (tr. 960). For these reasons, the ALJ failed to adequately assess Ms. Seutter's testimony.

III. Plaintiff's Credibility

Plaintiff contends the ALJ's credibility assessment was not legally sufficient. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Defendant responds that the ALJ "provided several different reasons for concluding plaintiff is not a credible source of information . . . [but] agrees the ALJ's analysis is inadequate." Def.'s Br.

Page 13 - OPINION AND ORDER

3-4. Specifically, defendant concedes that remand is appropriate because the ALJ's finding regarding activities of daily living "did not specifically discuss the contradiction between Plaintiff's allegations and her performance of those activities." Def.'s Br. 4.; (tr. 49-50).

The ALJ, however, also found plaintiff less than credible because her medications had been "relatively effective in controlling her symptoms." (Tr. 50.) Indeed, plaintiff reported her incontinence improved with the use of over-the-counter medications, such as Imodium, and could be controlled by modifying her food intake. Tr. 79. Curiously, plaintiff indicated she did not take any medications for loose bowels, including Imodium. *Id.* The Ninth Circuit has long established that evidence of conservative treatment is sufficient to discount testimony regarding the severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citation omitted). When asked why plaintiff did not use non-prescription medication to address her incontinence, she initially replied she did not know, but proceeded to explain she would need to take more than one pill in order to notice improvement, which allowed her to "walk fast," rather than run, to the bathroom. (Tr. 80.) The court does not find plaintiff's explanation compelling given the alleged severity of her incontinence symptoms. As discussed *supra,* the ALJ did not err in addressing plaintiff's incontinence in the RFC formulation.

However, plaintiff also testified to severe pain symptoms arising from her history of abdominal surgeries resulting in persistent abdominal pain in addition to low back pain, which the ALJ found to be severe impairments at step two. (Tr. 41.) Thus, while the ALJ made the blanket statement that plaintiff's medications "for pain and other symptoms" had been relatively effective, this assertion is not supported by substantial evidence. For example, although plaintiff testified that her incontinence medication was somewhat effective when taken, she did not, contrary to the ALJ's

Page 14 - OPINION AND ORDER

assertion, testify that her pain medication was effective. *See, e.g.*, (tr. 82-83, 85-86, 93-94). Furthermore, Dr. Kellogg, M.S.W. Seutter, and other treating and examining physicians noted plaintiff's persistent severe pain symptoms, particularly in the abdominal area, throughout the record. *See, e.g.* (tr. 524, 595-97, 648-49, 748, 830, 842, 962, 971). While the ALJ may not have erred in assessing plaintiff's testimony as to the apparent efficacy of her medication for incontinence, the ALJ did not provide clear and convincing (or even specific and legitimate) reasons to discount her pain symptoms. Considering the record as a whole, the ALJ's findings regarding the overall efficacy of plaintiff's "medications" are incomplete, and therefore cannot reasonably support her conclusion. Remand is warranted.

IV. <u>Alcoholism, Substance Abuse</u>

Defendant argues that remand is required in order to allow further development of plaintiff's "substance and alcohol abuse issues." Def.'s Br. 4. Specifically, defendant argues that because the ALJ determined plaintiff had the severe impairments of alcoholism and marijuana abuse at step two, plaintiff cannot be deemed disabled until a fact finder determines that drug addiction or alcoholism was not a "contributing factor material to the determination of disability." *See* SSR 13-2p, *available at* 2013 WL 621536, *4. Plaintiff contends her substance use is not material to her disability determination because her psychiatric conditions alone render her disabled, according to Ms. Seutter. Pl.'s Reply 6. Plaintiff's argument fails, however, because the evidence plaintiff refers to includes "alcohol dependence" as a diagnosis, and Ms. Seutter notes in her opinion that "[t]he combination of physical complications, *substance use*, & emotional stress have had long standing effects on [plaintiff's] ability to cope with daily life and responsibilities." (Tr. 962.) (Emphasis added.)

Plaintiff also contends that "the Court's substantial review is constrained to examine only

the findings and reasoning asserted by the ALJ below." Pl.'s Reply 9. The parties agree that despite finding alcoholism and marijuana abuse severe impairments, the ALJ did not determine whether either condition was material to plaintiff's disability. The ALJ did not reach the question because she did not find the plaintiff otherwise disabled. If the ALJ had made a disability finding, she would have then been obligated to determine if substance use was a material contributing factor by proceeding through the sequential evaluation process a second time. *See* 42 U.S.C. §§ 423(d)(2)(C), 1383c(a)(3)(J); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). Here, although substance use was not asserted by the ALJ, it remains a consideration in determining whether plaintiff is disabled within the meaning of the Act. *See* SSR 13-2p (" . . . a claimant shall not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled.") (quoting 42 U.S.C. §§ 223(d)2(C), 1614(a)(3)(J)) (internal quotation marks and asterisks omitted).

Accordingly, although plaintiff argues the ALJ's legal errors should be credited as true and the case remanded for payment of benefits, the Ninth Circuit has repeatedly stressed that benefits cannot be awarded, despite an ALJ's errors, if a plaintiff is not actually disabled. *See, e.g., Garrison*, 759 F.3d at 1021; *Treichler*, 775 F.3d at 1106-07. Because the evidence does not unequivocally establish that alcoholism or marijuana is *not* materially contributory to plaintiff's limitations, the court cannot award benefits absent an assessment of their contribution. Further proceedings are required to determine the impact, if any, of plaintiff's substance use upon her ability to function in the workplace.

IV. Additional Evidence

Plaintiff submitted additional evidence to the court following the Appeals Council's denial

of review. ECF No. 18-2 at *1-6. The Appeals Council neither had the opportunity to review the evidence nor make it part of the administrative record. (Tr. 1-4.) While the court must review the ALJ's decision based on the record as a whole, including evidence submitted to the Appeals Council post-hearing, the circumstances here are distinguishable. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Unlike *Brewes*, because the Appeals Council did not review the newly submitted evidence, it is not properly before the court in this appeal.

For evidence submitted after the Appeals Council issues its decision, remand for consideration of new evidence is appropriate if a claimant presents evidence that is material to determining disability, and there is good cause for the failure to produce the evidence earlier. *Wainwright v. Sec'y of Health and Human Services*, 939 F.3d 680, 682 (9th Cir.1991). To meet the materiality standard, the "new or additional evidence offered must bear directly and substantially on the matter is dispute." *Id.*, citing *Ward v. Schweiker*, 686. F.2d 762, 764 (9th Cir.1982). Evidence is material when it has a reasonable possibility of changing the ALJ's determination. *See Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1381 (9th Cir.1984).

Here, because the new evidence was not considered by the Appeals Council and is not part of the record, plaintiff must show "good cause" for failing to include the evidence previously. Plaintiff has not made such a showing, and therefore the new evidence was not considered in decision. Nonetheless, defendant "agrees" the evidence should be considered upon remand. *See* Def.'s Br. 10. Because this matter is reversed and remanded for further proceedings, the new evidence can be made part of the record following remand.

V. Remand

The parties concur that remand is necessary. The ALJ erred in assessing the medical opinion

testimony and impairments set forth by Dr. Kellogg, provided legally insufficient reasons for discrediting M.S.W. Seutter, and erred in assessing plaintiff's credibility regarding her pain testimony. Courts may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Remand for the calculation of benefits is one possible remedy. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted). The Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the record has been fully developed and further proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020.

Plaintiff argues the court should fully credit her testimony, as well as the opinions of Dr. Kellogg and Ms. Seutter; and remand for an immediate award of benefits. Plaintiff relies on the Ninth Circuit's statement, "allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 595; *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted). While the court acknowledges plaintiff's contention that directing further proceedings in this case arguably allows the Commissioner a "do-over," outstanding fact-finding issues remain which are beyond the court's purview.

As outlined above, the ALJ did not commit legal error in finding plaintiff's incontinence is controlled with fairly conservative treatment. Both of the experts plaintiff asks this court to fully

credit noted that incontinence was at least a factor in establishing their opinions regarding her functional capacity. In order to resolve these ambiguities, an ALJ is the appropriate arbiter. *See Lingenfelter*, 504 F.3d at 1044.

On remand, the ALJ shall:

1. Conduct a new hearing;

2. Update and further develop the record, including the medical evidence from Karl Knudsen, M.D., relative to plaintiff's alleged right knee condition;

3. Re-evaluate the medical opinion evidence of Dr. Kellogg;

4. Re-evaluate the evidence and opinion of M.S.W., C.S.W.A. Seutter;

5. Re-evaluate the symptom testimony provided by plaintiff;

6. Reformulate plaintiff's RFC pursuant to the ALJ's new findings;

7. Obtain appropriate evidence from a VE at step five;

8. Determine whether SSR 13-2p is applicable and proceed accordingly; and

9. Issue a new decision.

Plaintiff may present further evidence in the form of medical records, opinion evidence, or written or oral testimony.

//

//

//

//

//

//

*Conclusion*

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 9th of September 2015.

                                                            JOHN V. ACOSTA  
                                         United States Magistrate Judge